FILED
2015 Oct-01  AM 08:49
U.S. DISTRICT COURT
N.D. OF ALABAMA



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### (SOUTHERN DIVISION)

| | | |
|---|---|---|
| MICHAEL KEENER, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. |
| EQUIFAX INFORMATION SERVICES, LLC; | ) | |
| CBCINNOVIS, INC.; DATA FACTS, INC.; | ) | |
| EQUIFAX MORTGAGE SOLUTIONS, LLC; | ) | |
| and OLD REPUBLIC CREDIT.COM LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

COMES NOW the plaintiff, Michael Keener, Jr. ("Plaintiff"), by and through the undersigned counsel, and for Plaintiff's complaint alleges as follows:

## PRELIMINARY STATEMENT

1.      This is an action for an actual, statutory and punitive damages, costs and attorneys' fees pursuant to 15 U.S.C. §1681, *et seq*. (Fair Credit Reporting Act).

2.      Congress, when it enacted the FCRA in 1970, mandated the existence and use of reasonable procedures to assure the maximum accuracy of the personal and financial information compiled concerning consumers and sold to users by consumer reporting agencies ("CRAs").

3.     On December 4, 2003, President George W. Bush signed into law the Fair and Accurate Credit Transactions Act ("FACTA").

4.     This legislation gives consumers unprecedented tools to fight identity theft and continued access to the most dynamic credit markets in the world. With a free credit report and powerful new tools to fight fraud, consumers have the ability to better protect themselves and their families.[1]

5.     In addition to accounts reported due to identity theft, mixed files are a serious problem in the credit reporting industry.

6.     Mixed files occur when information relating to one consumer is placed in the file of another consumer.   In other words, a "mixed file" occurs when information that relates to Consumer B appears in Consumer A's credit file.

7.     Mixed files create a false description of a consumer's credit history. Further, mixed files result in the disclosure of a consumer's most personal identifying and financial information absent the consumer's knowledge, consent, or permissible purpose.

8.     Mixed files are not a new phenomenon.  Equifax has been on notice of the existence of mixed files for over thirty (30) years.  *See Thompson v. San Antonio Retail Merchants Ass'n*, 682 F.2d 509 (5th Cir. 1982).

---

[1]     http://georgewbush-whitehouse.archives.gov/news/releases/2003/12/20031204-3.html     last visited September 14, 2015.

9.     Mixed files occur despite consumers' unique personal identifying information, such as Social Security numbers.

10.    Yet, Equifax's matching logic allows information to be included in a consumer's file even when the Social Security numbers do not match nine out of nine digits.

11.    For example, Equifax has been known to mix files when consumers' names are similar, but the Social Security numbers match only seven out of nine digits. *See Apodaca v. Discover Fin. Servs.*, 417 F.Supp. 2d 1220 (D.N.M. 2006).

12.    In the mid-1990's, the Federal Trade Commission ("FTC") and various state attorney generals' offices, including Alabama, Arkansas, California, Connecticut, Delaware, Florida, Idaho, Illinois, Louisiana, Michigan, Minnesota, Missouri, Nevada, New Hampshire, New Mexico, New York, Ohio, Pennsylvania, Rhode Island, Texas, Utah and Washington charged Equifax with violations of the FCRA.

13.    The government enforcement action required Equifax to improve its procedures and prevent mixed files. *In re Equifax Credit Information Services, Inc.*, (June 22, 1992); *In the Matter of Equifax Credit Information Services, Inc.*, 12 F.T.C. 577 (Aug. 14, 1995); *In the Matter of Equifax Credit Information Services, Inc.*, 61 Fed. Reg. 15484 (Apr. 8, 1996).

14.     More recently, in March 2015, the New York Attorney General defined a mixed file as credit file information that is mixed with that of another consumer and announced a settlement with Equifax ("the New York Attorney General action").[2]

15.     Similarly, after the New York Attorney General action, attorney generals from Alabama, Alaska, Arizona, Arkansas, Florida, Georgia, Hawaii, Idaho, Illinois, Indiana, Iowa, Kansas, Louisiana, Maine, Maryland, Massachusetts, Michigan, Missouri, Nebraska, Nevada, New Mexico, North Carolina, North Dakota, Ohio, Oregon, Pennsylvania, Rhode Island, Tennessee, Texas, Vermont and Wisconsin settled an enforcement action requiring Equifax to, *inter alia,* limit direct to consumer marketing credit monitoring services to consumers during dispute phone calls and the implementation of escalated processes for mixed file disputes.[3]

16.     In addition to government enforcement actions, Equifax and the other defendants have been on notice of mixed files from civil lawsuits.

17.     For example, in 2007, Angela Williams sued Equifax in Florida and alleged Equifax mixed her file with another consumer.

---

[2] See http://www.ag.ny.gov/press-release/ag-schneiderman-announces-groundbreaking-consumer-protection-settlement-three-national Last visited April 22, 2015.

[3] See http://www.ri.gov/press/view/24865 Last visited September 14, 2015.

18.     The case was presented to a jury.  The jury entered a verdict in favor of the plaintiff, Angela Williams, for over $2.9 million, including $219,000 in actual damages and $2.7 million in punitive damages.

19.     Since 2007, Equifax has been sued hundreds of times by consumers who alleged Equifax included information in their credit file which belonged to another consumer.

20.     More recently, Julie Miller sued Equifax in Oregon.

21.     Julie Miller alleged Equifax mixed her file with another consumer in violation of the FCRA.

22.     The case was presented to a jury.

23.     The jury returned a verdict against Equifax for $18.6 million ("Miller verdict").

24.     Despite federal law, Congressional mandates, federal and state government enforcement actions, the Thomas and Miller verdicts and hundreds of consumer lawsuits, mixed files remain a significant problem for consumers, including Plaintiff.

25.     Before this lawsuit, the defendants knew about mixed files.

26.     The defendants have been sued before wherein an allegation was made that the defendants sold a consumer report that included information, which belonged information to another consumer.

27.    False information in a consumer's file harms the consumer.

28.    False information in a consumer's file misleads creditors as to the consumer's creditworthiness.

29.    False information in a consumer's file misleads creditors as to the consumer's credit history.

30.    The sale of American's most private and sensitive personal and financial information is a multi-billion dollar industry for consumer reporting agencies.

31.    In 2014, Equifax received over $2.436 billion dollars in revenue.[4]

32.    The instant lawsuit seeks compensatory, statutory and punitive damages, costs of suit and attorneys' fees for Plaintiff, resulting from the defendants' failure to comply with the FCRA.

## JURISDICTION & VENUE

33.    This Court has jurisdiction pursuant to 15 U.S.C. §1681p.

34.    Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b).

---

[4] http://investor.equifax.com last visited September 14, 2015.

PARTIES

35.    Plaintiff Michael Keener, Jr. ("Plaintiff") is an adult individual resident of this judicial district. Plaintiff is a "consumer" as defined by 15 U.S.C. §1681a(c).

36.    Defendant Equifax Information Services, LLC ("Equifax") is a Georgia corporation with its principal place of business in the state of Georgia. Equifax does business in this judicial district.  Equifax is a nationwide consumer reporting agency ("CRA") as defined by 15 U.S.C. §1681a(f).  Equifax regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing "consumer reports" as defined by 15 U.S.C. §1681a(f) to third parties.  Equifax disburses such consumer reports to third parties of contract for monetary compensation.

37.    Defendant CBCInnovis, Inc. ("Innovis"), is a foreign corporation with its principal place of business, upon information and belief, in the state of Pennsylvania.  Innovis does business in this judicial district.  Innovis is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

38.    Innovis, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the nationwide consumer reporting agencies, Equifax, Experian and Trans Union.  The consumer

7

credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries. Once Innovis receives the requested consumer credit information, it assembles and merges the information into an Innovis credit report. Innovis sells the credit report to third parties.

39.    Innovis regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties. Further, Innovis disburses consumer reports to third parties of contract for monetary compensation.

40.    Defendant Data Facts, Inc. ("Data Facts") is a foreign corporation with its principal place of business, upon information and belief, in the state of Tennessee. Data Facts does business in this judicial district. Data Facts is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

41.    Data Facts, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the nationwide consumer reporting agencies, Equifax, Experian and Trans Union. The consumer credit information maintained for individual consumers by the nationwide

consumer reporting agencies includes public record information, collection accounts, trade accounts, personal identifying information and inquiries. Once Data Facts receives the requested consumer credit information, it assembles and merges the information into an Data Facts credit report. Data Facts sells the credit report to third parties.

42.    Data Facts regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties. Further, Data Facts disburses consumer reports to third parties of contract for monetary compensation.

43.    Defendant Equifax Mortgage Solutions, LLC ("EMS") is a foreign corporation with its principal place of business located at 815 East Gate Drive, Suite 102, Mount Laurel, New Jersey 08054-1243. EMS Data does business in this judicial district. EMS is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

44.    EMS, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the nationwide consumer reporting agencies, including Equifax, Experian and Trans Union. The consumer credit information maintained for individual consumers by the nationwide consumer reporting agencies includes public record information,

collection accounts, trade accounts, personal identifying information and inquiries. Once EMS receives the requested consumer credit information, it assembles and merges the information into an EMS credit report.  EMS sells the credit report to third parties.

45.    EMS regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties.  Further, EMS disburses consumer reports to third parties of contract for monetary compensation.

46.    Defendant Old Republic Credit.com, ("Old Republic") is a foreign corporation with its principal place of business located at 65 East Wacker Place #1405, Chicago, Illinois 60602.   Old Republic does business in this judicial district.  Old Republic is a consumer reporting agency ("CRA") as defined by 15 U.S.C. 1681a(f) and a reseller of credit information.

47.    Old Republic regularly engages in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports as defined by 15 U.S.C. §1681a(f) to third parties. Further, Old Republic disburses consumer reports to third parties of contract for monetary compensation.

48.    Old Republic, in its capacity as a consumer reporting agency and reseller of consumer information, obtains consumer credit information from the

nationwide consumer reporting agencies, including Equifax, Experian and Trans Union.  The consumer credit information maintained for individual consumers by the nationwide CRAs includes public record information, collection accounts, trade accounts, personal identifying information and inquiries.  Once Old Republic receives the requested consumer credit information, it assembles and merges the information into an Old Republic credit report.  Old Republic sells the credit report to third parties.

FACTUAL ALLEGATIONS

49.   In or around March 2014, Plaintiff applied for a mortgage with National Bank of Commerce.

50.   Old Republic provided Plaintiff's credit report to National Bank of Commerce with the false information pertaining to Plaintiff

51.   Specifically, Old Republic provided Plaintiff's credit report to National Bank of Commerce with an unpaid judgment in favor of LVNV Funding, LLC ("the judgment").

52.   The judgment was false because LVNV did not have a judgment against Plaintiff.

53.   Upon information and belief, the judgment belonged to Plaintiff's father.

54.     National Bank of Commerce obtained the judgment information from Equifax.

55.     Equifax reported the judgment against Plaintiff.

56.     That same day, Old Republic also obtained obtained credit reports from Experian and Trans Union pertaining to Plaintiff that did not include the judgment.

57.     Experian and Trans Union did not report the judgment against Plaintiff.

58.     Old Republic provided National Bank of Commerce with a credit report pertaining to Plaintiff that included reports from Equifax, Experian and Trans Union.

59.     First National Bank of Commerce denied Plaintiff's application for the mortgage.

60.     The judgment was a substantial factor for the denial.

61.     In or around May or June 2014, Plaintiff applied for a mortgage with First Partners Bank.

62.     Innovis provided Plaintiff's credit report to First Partners Bank with false information pertaining to Plaintiff

63.     Specifically, Innovis provided Plaintiff's credit report to First Partners Bank with the judgment.

64.   Innovis obtained the judgment information from Equifax.

65.   Equifax reported the judgment against Plaintiff.

66.   That same day, Innovis obtained credit reports from Experian and Trans Union pertaining to Plaintiff that did not include the judgment.

67.   Experian and Trans Union did not report the judgment against Plaintiff.

68.   Innovis provided a credit report pertaining to Plaintiff that included reports from Equifax, Experian and Trans Union.

69.   First Partner's Bank denied Plaintiff's application for the mortgage.

70.   The judgment was a substantial factor for the denial.

71.   In or around May 2014, Plaintiff applied for a mortgage with First Bank Cahaba Heights.

72.   Data Facts provided Plaintiff's credit report to First Partners Bank with the false information pertaining to Plaintiff

73.   Specifically, Data Facts provided Plaintiff's credit report to First Cahaba Heights with the judgment.

74.   Data Facts obtained the judgment information from Equifax.

75.   Equifax reported the judgment against Plaintiff.

76.   That same day, Data facts obtained credit reports from Experian and Trans Union pertaining to Plaintiff that did not include the judgment.

77. Experian and Trans Union did not report the judgment against Plaintiff.

78. Data Facts provided First Bank Cahaba Heights a credit report pertaining to Plaintiff that included reports from Equifax, Experian and Trans Union.

79. Data Facts took no action to reconcile the inconsistent public record information before it sold Plaintiff's report to First Bank Cahaba Heights.

80. First Bank Cahaba Heights denied Plaintiff's application for the mortgage.

81. The judgment was a substantial factor for the denial.

82. In or around August 2014, Plaintiff applied for a mortgage with Synovus Financial.

83. EMS provided Plaintiff's credit report to Synovus Financial with the false information pertaining to Plaintiff

84. Specifically, EMS provided Plaintiff's credit report to Synovus with the judgment.

85. EMS obtained the judgment information from Equifax.

86. Equifax reported the judgment against Plaintiff.

87. That same day, EMS obtained credit reports from Experian and Trans Union pertaining to Plaintiff that did not include the judgment.

88.     Experian and Trans Union did not report the judgment against Plaintiff.

89.     EMS provided Synovus Financial a credit report pertaining to Plaintiff that included reports from Equifax, Experian and Trans Union.

90.     EMS took no action to reconcile the inconsistent public record information before it sold Plaintiff's report to Synovus Financial.

91.     Synovus Financial denied Plaintiff's application for the mortgage.

92.     The judgment was a substantial factor for the denial.

93.     Plaintiff disputed the judgment to Equifax online and by fax.

94.     Equifax notified Plaintiff that the judgment belonged to Plaintiff.

95.     Equifax continued to report the judgment to third parties as belonging to Plaintiff and unpaid.

96.     Equifax sent several letters to Plaintiff stating, "We verified that this item belongs to you.  If you have additional questions about this item please contact: Marshall Cty Courthouse, Guntersville AL 35769 Phone: (256) 571-7785."

97.     Equifax did not contact the Marshall County Courthouse before it reported the information or as a part of a reinvestigation of the disputed judgment.

98.     Equifax did not contact the judgment creditor, LVNV, as a part of its reinvestigation of the disputed information.

99.   Equifax provided Plaintiff's credit report to third parties when a request was made by a third party for Plaintiff's father's Equifax report.

100.   Equifax failed to perform a reasonable reinvestigation of Plaintiff's dispute.

101.   Equifax failed to have or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report.

102.   None of the defendants contacted the Marshall County Courthouse to determine if the judgment belonged to Plaintiff before they reported the judgment to third parties.

103.   Old Republic, Data Facts, EMS and Innovis did not contact Equifax before they sold the judgment information to the above-named users of Plaintiff's credit report.

104.   Said defendants failed to have or follow reasonable procedures to assure the maximum possible accuracy of Plaintiff's credit report.

105.   At all times relevant hereto, Equifax, EMSA, Data Facts, Innovis and Old Republic, acted through their agents, servants and/or employees who were acting within the scope of their employment or agency, or both, and under the direct supervision of the defendants.

106.   The defendants' unlawful conduct proximately caused Plaintiff's actual damages, including but not limited to: harm to credit reputation; reduction in

credit score; denial of credit; invasion of privacy; emotional distress and mental anguish; out-of-pocket expenses; interference with normal and usual activities; and time.

COUNT 1 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(against Equifax)
(Negligent Noncompliance with FCRA)

107.  Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

108.  Equifax negligently failed to comply with the requirements of the FCRA.

109.   As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.

110.   Plaintiff requests his attorneys' fees pursuant to 15 U.S.C. § 1681o(a).

<u>SECOND CLAIM FOR RELIEF</u>
(against Equifax)
(Willful Noncompliance with FCRA)

111.  Plaintiff adopts and realleges the foregoing paragraphs and incorporates them herein by reference.

17

112.   Equifax willfully failed to comply with the requirements of the FCRA.

113.   As a result of Equifax's failure to comply with the requirements of the FCRA, Plaintiff has suffered, and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury.  Plaintiff also seeks punitive damages in an amount to be determined by the jury.

114.   Plaintiff requests attorneys' fees pursuant to 15 U.S.C. § 1681n(a).

COUNT 3 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Innovis)
(Negligent Noncompliance with the FCRA)

115.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

116.   Innovis negligently failed to comply with the requirements of the FCRA.

117.   As a result of Innovis's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's

normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

118.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 4 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Innovis)
(Willful Noncompliance with the FCRA)

119.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

120.   Innovis willfully failed to comply with the requirements of the FCRA.

121.   As a result of Innovis's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

122.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

COUNT 5 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Data Facts)
(Negligent Noncompliance with the FCRA)

123.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

124.   Data Facts negligently failed to comply with the requirements of the FCRA.

125.   As a result of Data Fact's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

126.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

COUNT 6 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Data Facts)
(Willful Noncompliance with the FCRA)

127.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

128.   Data Facts willfully failed to comply with the requirements of the FCRA.

129.   As a result of Data Fact's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be

determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

130.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

## COUNT 7 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against EMS)
### (Negligent Noncompliance with the FCRA)

131.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

132.   EMS negligently failed to comply with the requirements of Section 1681e(b) of the FCRA.

133.   As a result of EMS's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

134.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

## COUNT 8 - VIOLATION OF THE FAIR CREDIT REPORTING ACT
### (Against EMS)
### (Willful Noncompliance with the FCRA)

135.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

136.   EMS willfully failed to comply with the requirements of Section 1681e(b) of the FCRA.

137.   As a result of EMS's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

138.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

### COUNT 9 – VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Old Republic)
(Negligent Noncompliance with the FCRA)

139.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

140.   Old Republic negligently failed to comply with the requirements of Section 1681e(b) the FCRA.

141.   As a result of Old Republic's failure to comply with the requirements of the FCRA, plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with

plaintiff's normal and usual activities for which plaintiff seeks damages in an amount to be determined by the jury.

142.   Plaintiff requests fees pursuant to 15 U.S.C. §1681o(a).

### COUNT 10 - VIOLATION OF THE FAIR CREDIT REPORTING ACT
(Against Old Republic)
(Willful Noncompliance with the FCRA)

143.   Plaintiff adopts and incorporates the above-numbered paragraphs as if fully stated herein.

144.   Old Republic willfully failed to comply with Section 1681e(b) of the requirements of Section 1681e(b) of the FCRA.

145.   As a result of Old Republic's failure to comply with the requirements of the FCRA, Plaintiff has suffered and continues to suffer, actual damages, including economic loss, denial of credit, lost opportunity to receive credit, damage to reputation, invasion of privacy, emotional distress and interference with Plaintiff's normal and usual activities for which Plaintiff seeks damages in an amount to be determined by the jury. Plaintiff also seeks punitive damages in an amount to be determined by the jury.

146.   Plaintiff requests attorney fees pursuant to 15 U.S.C. §1681n(a).

147.   Plaintiff requests a jury trial on all claims.

### PRAYER

Wherefore, Plaintiff prays for judgment against Defendants as follows:

On the First Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Attorneys' fees; and

3.      Costs and expenses incurred in the action.

On the Second Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Statutory and punitive damages to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs and expenses incurred in the action.

On the Third Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Attorneys' fees; and

3.      Costs and expenses incurred in the action.

On the Fourth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Statutory and punitive damages to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs and expenses incurred in the action.

On the Fifth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Attorneys' fees; and

3.      Costs and expenses incurred in the action.

On the Sixth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Statutory and punitive damages to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs and expenses incurred in the action.

On the Seventh Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Attorneys' fees; and

3.      Costs and expenses incurred in the action.

On the Eighth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Statutory and punitive damages to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs and expenses incurred in the action.

On the Ninth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Attorneys' fees; and

3.      Costs and expenses incurred in the action.

On the Tenth Claim for Relief:

1.      Actual damages to be determined by the jury;

2.      Statutory and punitive damages to be determined by the jury;

3.      Attorneys' fees; and

4.      Costs and expenses incurred in the action.


Dated:          September 30, 2015


                        Respectfully submitted,

                        /s/ Micah S. Adkins
                        Micah S. Adkins (ASB-8639-I48A)
                        **THE ADKINS FIRM, P.C.**
                        301 19th Street North, Suite 581
                        The Kress Building
                        Birmingham, Alabama 35203
                        Telephone:  205.458.1202
                        Facsimile:   205.208.9632
                        Email:         MicahAdkins@ItsYourCreditReport.com